IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BLISS REED ENTERPRISES INC., )
BLISS REED ENTERPRISES II INC., DNB FITNESS, LLC, )
DT FITNESS INC., GYMTEL LLC, JAF, LLC, )
J.H.F. ENTERPRISES, JWL FITNESS, LLC, )
KARE4 FITNESS, LLC, KLEAR FIT, LLC I, )
KODY ENTERPRISES OF MINNESOTA, LLC, )
MOUNTAIN LAUREL ENT., LLC, NEW AGE FITNESS INC., )
NO WEIGHT FITNESS, LLC, VIRES, LLC, PKN, INC., )
SHOCKLEY FITNESS, LLC, SOUTHEAST FITNESS, LLC, )
TED A. TOLLESON, WPD ENTERPRISES, LLC )
)
Plaintiffs, )
)
v. ) No. 11-4892
)
ANYTIME FITNESS, LLC, )
)
Defendant. )

## COMPLAINT

Plaintiffs, BLISS REED ENTERPRISES INC., BLISS REED ENTERPRISES II INC., DNB FITNESS, LLC, DT FITNESS INC., GYMTEL LLC, JAF, LLC, J.H.F ENTERPRISES, JWL FITNESS, LLC, KARE4 FITNESS, LLC, KLEAR FIT, LLC, KODY ENTERPRISES OF MINNESOTA, LLC, MOUNTAIN LAUREL ENT., LLC, NEW AGE FITNESS INC., NO WEIGHT FITNESS, LLC, VIRES, LLC, PKN, INC., SHOCKLEY FITNESS, LLC, SOUTHEAST FITNESS, LLC, TED A. TOLLESON, and WPD ENTERPRISES, LLC, by their attorneys, O'FLAHERTY LAW, P.C. and APPEL & KELLY, LTD. for their complaint against Defendant, Anytime Fitness, LLC, and state as follows:

1. Defendant Anytime Fitness, LLC is a corporation organized under the laws of Minnesota with its principal office located at 12181 Margo Ave S, Hastings, Minnesota.

Anytime Fitness, LLC does business as a franchisor of Anytime Fitness, a national fitness center franchise.

2. Plaintiff Bliss Reed Enterprises, INC., a Texas corporation organized under the laws of Texas, is the owner of an Anytime Fitness franchise located at 611 N. Bishop Ave., Ste. 100, Dallas TX.

3. Plaintiff Bliss Reed Enterprises II, INC., a Texas corporation organized under the laws of Texas, is the owner of an Anytime Fitness franchise located at 2380 Firewheel Pkwy, Garland, TX.

4. Plaintiff DNB Fitness, an Oregon corporation organized under the laws of Oregon, is the owner of an Anytime Fitness franchise located at 2736 Pacific BLVD SE, Albany OR, 1258 Silver Lane, Eugene, OR, 935 N. 1st, Slayton, OR.

5. Plaintiff DT Fitness Inc., a Kansas corporation organized under the laws of Kansas, is the owner of an Anytime Fitness franchise located at 255 N. Stone Creek Drive, Gardner, KS.

6. Plaintiff Gymtel, LLC, a California corporation organized under the laws of California, is the owner of an Anytime Fitness franchise located at 3001 "F" Street, Unit B, Bakersfield, CA, 410 West "J" Street, Unit B, Tehachapi, CA.

7. Plaintiff JAF, LLC, a Washington corporation organized under the laws of Washington, is the owner of an Anytime Fitness franchise located at 25 95th Drive, NE #107, Lake Stevens, WA, 3916 148th St. SE #205, Mill Creek, WA.

8. Plaintiff J.H.F. Enterprises, LLC, a Georgia corporation organized under the laws of Georgia, is the owner of an Anytime Fitness franchise located at 2615 Peachtree Industrial Blvd., Duluth, GA.

9. Plaintiff Kare-4 Fitness, LLC, an Iowa corporation organized under the laws of Iowa, is the owner of an Anytime Fitness franchise located at 5250 Northwest Blvd., Ste. 4, Davenport, IA.

10. Plaintiff JWL Fitness, LLC, a Missouri corporation organized under the laws of Missouri, is the owner of an Anytime Fitness franchise located at 316 NE 291 Hwy Lees Summit, MO.

11. Plaintiff KLEAR FIT, LLC, an Iowa corporation organized under the laws of Iowa, is the owner of an Anytime Fitness franchise located at 1862 South West Avenue, Freeport, IL 61032.

12. Plaintiff Kody Enterprises of Minnesota, LLC, a Minnesota corporation organized under the laws of Minnesota, is the owner of an Anytime Fitness franchise located at 23212 St. Francis Blvd. Ste. 900, St. Francis, MN, 26233 2nd St., Ste. 400, Zimmerman, MN.

13. Plaintiff Mountain Laurel Ent., LLC, a Colorado corporation organized under the laws of Colorado, is the owner of an Anytime Fitness franchise located at 13655 W. Jewell Ave., Ste. 201B, Lakewood, CO.

14. Plaintiff New Age Fitness Inc., a Kansas corporation organized under the laws of Kansas, is the owner of an Anytime Fitness franchise located at 3514 Clinton Pkwy, Ste. H, Lawrence, KS.

15. Plaintiff No Weight Fitness, LLC, an Oregon corporation organized under the laws of Oregon, is the owner of an Anytime Fitness franchise located at 15605 SW 116th Avenue, Tigard, OR.

16. Plaintiff Vires, LLC, an Ohio corporation organized under the laws of Ohio, is the owner of an Anytime Fitness franchise located at 322 S. Hollywood Blvd., Ste. 1, Steubenville, OH.

17. Plaintiff PKN Inc., a Washington corporation organized under the laws of Washington, is the owner of an Anytime Fitness franchise located at 3943 116th Street NE, Ste. 112, Marysville, WA, 7104 265th Street NW, Ste. 130, Stanwood, WA.

18. Plaintiff Shockley Fitness, LLC, a Missouri corporation organized under the laws of Missouri, is the owner of an Anytime Fitness franchise located at 643 W. Highway 92, Kearney, MO.

19. Plaintiff Southeast Fitness, LLC, a Texas corporation organized under the laws of Texas, is the owner of an Anytime Fitness franchise located at 1145 Texas Ave., Ste. A, Bridge City, TX.

20. Plaintiff WPD Enterprises, LLC, a Pennsylvania corporation organized under the laws of Pennsylvania, is the owner of an Anytime Fitness franchise located at 33 Fairground Road, Dallas, PA.

21. Plaintiff Ted A. Tolleson is a natural person who owns an Anytime Fitness franchise located at 1067 North Main Street, Vidor, TX.

22. Plaintiffs seek an injunction pursuant to Section 3 of the Clayton Act, 15 U.S.C. § 14. Therefore, this Court has exclusive subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331. See General Inv. Co. v. Lake Shore & M.S. Ry. Co., 43 S. Ct. 106, 116 (1922) (holding that the Federal Court system has exclusive jurisdiction over claims brought pursuant to federal anti-trust statutes).

23. In addition, plaintiff seeks a declaratory judgment, over which this Court has the power to declare the rights and remedies of the respective parties. 28 U.S.C § 2201.

24. The Northern District of Illinois has personal jurisdiction over Defendant pursuant to both the Illinois "doing business doctrine", as discussed in Quad-L, Ltd. v. Tastee-Freez of West Central Illinois, 528 N.E.2d 1107 (3d Dist. 1988), and the Illinois long-arm statute, 735 ILCS 5/2-209(a)(2011), because Defendant has executed a franchise agreement with plaintiff KLEAR FIT, LLC I, attached hereto as Exhibit A, for the establishment of an Anytime Fitness franchise in Freeport, Illinois.

25. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), because the Northern District of Illinois is a district where Defendant "resides", by virtue of the personal jurisdiction exercised by the state of Illinois and Defendant's particular contacts with the Northern District of Illinois created by its franchise agreement with KLEAR FIT, LLC I. 28 U.S.C. § 1391(c) supplies the definition of a corporation's "residence" for the purposes of 28 U.S.C. § 1391(b)(1), stating as follows:

> For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.1), stating as follows:

28 U.S.C. § 1391(c) (2011).

26. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred herein. Plaintiff KLEAR FIT, LLC I's fitness club, which is the object of KLEAR FIT, LLC I's contract with Defendant that is the subject of this case, is located in Freeport, Illinois.

27. Anytime Fitness franchisees are required to sign a take-it-or-leave-it franchise agreement drafted by Defendant (the Agreement). (Exh. A.)

28. Each franchisee's agreement contains the same material substantive provisions as those of other franchisees. The agreements themselves refer to "the standard Franchise Agreement". (See Exh. A, p. 2, ¶ 2(B)(5).

29. Prior to contracting with franchisees, Defendant is required by 16 CFR 436.1 to furnish a franchise disclosure document. Specifically, 16 C.F.R. 436.1 provides, in relevant part:

> In connection with the advertising, offering, licensing, contracting, sale, or other promotion in or affecting commerce, as "commerce" is defined in the Federal Trade Commission Act, of any franchise, or any relationship which is represented either orally or in writing to be a franchise, it is an unfair or deceptive act or practice within the meaning of section 5 of that Act for any franchisor or franchise broker:
>
> (a) To fail to furnish any prospective franchisee with the following information accurately, clearly, and concisely stated, in a legible, written document at the earlier of the "time for making of disclosures" or the first "personal meeting":
> * * *
>
> (7) A statement of the total funds which must be paid by the franchisee to the franchisor or to a person affiliated with the franchisor, or which the franchisor or such affiliated person imposes or collects in whole or in part on behalf of a third party, in order to obtain or commence the franchise operation, such as initial franchise fees, deposits, down payments, prepaid rent, and equipment and inventory purchases. If all or part of these fees or deposits are returnable under certain conditions, these conditions shall be set forth; and if not returnable, such fact shall be disclosed.

> (8) A statement describing any recurring funds required to be paid, in connection with carrying on the franchise business, by the franchisee to the franchisor or to a person affiliated with the franchisor, or which the franchisor or such affiliated person imposes or collects in whole or in part on behalf of a third party, including, but not limited to, royalty, lease, advertising, training, and sign rental fees, and equipment or inventory purchases.

16 C.F.R. 436.1 (2011).

30.     A Standard Franchise Disclosure Document issued by Defendants on March 26, 2009 is attached hereto as Exhibit B.

31.     Since December 1, 2009, all Anytime Fitness franchisees have been required by franchisor to enroll their clubs' existing and future members in a program called Anytime Health. (Exhibit C, Anytime Health Policy.) Anytime Health is a fitness website maintained by a third party, Anytime Health, LLC, which, on information and belief, is affiliated or shares ownership with Anytime Fitness, LLC.

32.     Defendant requires its franchisees to enroll all of their club members in the Anytime Health program. (Exh. C.)

33.     On June 4, 2010, Defendant issued a policy statement to its franchisees stating that, effective August 1, 2010, franchisees would be required to charge each club member joining after July 31, 2010 a repeating charge of at least fifty cents ($0.50) per month for enrollment in the Anytime Health program. Franchisees are required to forward the charge to Anytime Health, LLC. The amount paid by franchisees to Anytime Health, LLC is capped at two hundred and twenty five dollars ($225) per month per club. (Exh. C.)

34. Between August 1, 2010 and the present date, Defendant has been charging Plaintiffs and other Anytime Fitness franchisees with the monthly Anytime Health fee, and Plaintiffs have paid such fee.

35. The Anytime Health fee was not disclosed to Plaintiffs at the time of contracting, either in the Standard Franchise Disclosure Document or the standard Franchise Agreement, or in any other manner prior to June 4, 2010. (Exh. A; Exh. B.)

36. Anytime Health is an inferior product. Were it not a mandatory fee, customers would choose to use another product.

37. Use of Anytime Health by Plaintiffs' club members has been minimal and members have generally displayed little interest in the product.

### Count I
### Breach of Contract

1-37. Plaintiffs reallege paragraphs 1 through 37 of this Complaint as and for paragraphs 1 through 37 of Count I of this Complaint.

38. Plaintiffs individually contracted with Defendant prior to June 4, 2010 by executing standard Anytime Fitness franchise agreements similar in all relevant respects to that attached hereto as Exhibit A.

39. Three primary sections of the Agreement lay out the fees to be paid by franchisees: the Initial Fee, the Monthly Fee, and the Advertising fee. (Exh A., ¶¶ 4-6.)

40. Section 4(A) of the Agreement deals with the Initial Fee. It states as follows:

> Initial Franchise Fee. You will pay us a nonrefundable initial franchise fee (the "Initial Franchise Fee") as set forth in the Rider.

(Exh. A, ¶ 4(A).)

8

41. Section 5(A) of the the Agreement deals with the Monthly Fee. It states, in relevant part, as follows:

> You will pay us a monthly royalty payment (the "Monthly Fee"). The Monthly Fee will initially be Four Hundred Nineteen Dollars ($419) per month . . . . On January 1 of each year . . . we may increase the Monthly Fee to reflect inflation according to the changes in the Consumer Price Index . . .

(Exh. A, p. 5, ¶ 5(A).)

42. Section 6 of the Agreement describes the Advertising Fee. It states, in relevant part, as follows:

> B. Advertising Fee. We have established a general advertising and marketing fund ("the Fund"), and we require you to contribute each month to the Fund (the "General Advertising Fees").
> * * *
>
> 2. The General Advertising Fees may be based on a flat fee, or the number of members of your Anytime Fitness Center, or the square feet of your Anytime Fitness Center, or any other formula we [Corporate] deem appropriate. We reserve the right to increase the General Advertising Fee upon thirty (30) days' written notice, provided, however, that the General Advertising Fee will not be more than the greater of (i) One Hundred and Fifty Dollars ($150) per month, or (ii) one (1%) percent of all the revenues generated by your Anytime Fitness Center during the preceding 12 Months. We will use these fees as we feel appropriate for the general promotion of our system (and not necessarily specifically in your market), including the cost of administering the fund, but we will not use these fees for any advertising that is primarily directed at helping us sell franchises.
>
> C. Local Expenditures. In addition to the General Advertising Fees, we reserve the right to establish a program requiring that all or some of our franchisees spend certain amounts of money on approved local advertising

> ("the Program"). In areas in which the Program has been established prior to the opening of your Anytime Fitness Center, you must participate in the Program upon opening of your Anytime Fitness Center. In areas where we have not established the Program before you open your Anytime Fitness Center, we may do so upon written notice, at which time you will start spending the amounts of money mandated by the Program (the "Local Advertising Fees"). The Local Advertising Fees may be based on a flat fee, or the number of members of your Anytime Fitness Center, or the square feet of your Anytime Fitness Center, or any other formula we deem appropriate, provided, however, that the Local Advertising Fees will not be more than the greater of (I) One Hundred and Fifty Dollars ($150) per month, or (ii) one (1%) percent of all the revenues generated by your Anytime Fitness Center during the preceding 12 months. . .

(Exh. A, p. 6, ¶ 6.)

43. The Anytime Health fee is not a fee authorized by the Agreement and is not disclosed in the Franchise Disclosure Documents. It is to be charged in addition to Advertising and Monthly Fees.

44. Defendant's requirement that Plaintiffs pay a fee not authorized by the Agreement or disclosed in the Franchise Disclosure Documents constitutes a material breach of Defendant's franchise agreement with Plaintiffs.

45. Plaintiffs have performed their duties under the Agreement.

46. Plaintiffs have been damaged by Defendants' breach of the Agreement by continually being required to pay an illegal monthly fee to Defendants.

47. Plaintiffs' right to not be unilaterally charged unexpected and undisclosed fees by Defendant, not contained in the Agreement, is a clear and ascertainable right in need of protection.

48. Plaintiffs have no adequate remedy at law, because the Agreement, an adhesion contract drafted by Defendant, requires individual arbitration in the state of Minnesota for all claims

against Defendant seeking damages. Individual arbitration by Plaintiffs is impractical in this matter because the cost of individual arbitration in Minnesota would exceed the cost of the illegal Anytime Health fees charged by Defendant.

49. Plaintiffs will suffer irreparable harm if injunctive relief is not granted, because they will be required to continue paying the Anytime Health fee throughout the course of their franchise agreements.

WHEREFORE, the above-captioned Plaintiffs pray for the following relief:

    i. for a declaratory judgment declaring that the Anytime Health fee constitutes a breach of standard Anytime Fitness franchise agreements executed prior to June 4, 2011; and

    ii. for a permanent injunction ordering Anytime Health, LLC to cease and desist charging the Anytime Health fee to Plaintiffs; and

    iii. for a permanent injunction ordering Anytime Health, LLC to cease and desist the practice of charging the Anytime Health fee to all Anytime Fitness franchisees whose franchise agreements do not provide for the Anytime Health fee;

## Count II
### Violation of the Clayton Act

50. Plaintiffs reallege paragraphs 1 through 10 of Count I of this Complaint as and for paragraphs 1-10 of Count II of this Complaint.

51. Section 3 of the Clayton Act provides as follows:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, or fix a price charged therefor, or discount

> from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce.

15 U.S.C. § 14 (2011).

52. In requiring current Anytime Fitness franchisees to pay for the Anytime Health service, Defendant is using the leverage generated by its economic power among Anytime Fitness franchisees to accomplish sales in the fitness website market, an illegal tie-in in violation of Section 3 of the Clayton Act.

53. Defendant has sufficient economic power over Anytime Fitness franchisees to force the tie-in, because such franchisees have invested substantial time and money in their Anytime Fitness franchises, which Defendant may default for franchisees' failure to pay for the Anytime Health program.

54. A "not insubstantial" amount of sales is involved with the Anytime Health tie-in. Anytime Fitness is a nation-wide franchise with over 1,000 franchisees, each of which is required to pay as much as $250 per month toward the Anytime Health program.

47. Plaintiffs' right to not be forced by Defendant to purchase an illegal tie-in, is a clear and ascertainable right in need of protection.

48. Plaintiffs have no adequate remedy at law, because the Agreement, an adhesion contract drafted by Defendant, requires individual arbitration in the state of Minnesota for all claims against Defendant seeking damages. Individual arbitration by Plaintiffs is impractical in this matter because the cost of individual arbitration in Minnesota would exceed the cost of the illegal Anytime Health fees charged by Defendant.

49.     Plaintiffs will suffer irreparable harm if injunctive relief is not granted, because they will be required to continue paying the Anytime Health fee throughout the course of their franchise agreements.

WHEREFORE, the above-captioned Plaintiffs pray for the following relief:

    i.     for a declaratory judgment declaring that the Anytime Health fee constitutes an illegal tie-in in violation of Section 3 of the Clayton Act; and

    ii.    for a permanent injunction ordering Anytime Health, LLC to cease and desist charging the Anytime Health fee to Plaintiffs.

Respectfully submitted,

THE ABOVE-CAPTIONED PLAINTIFFS

By:   One of their attorneys

Kevin P. O'Flaherty #629-3488
O'FLAHERTY LAW, P.C.
2033 Ogden Ave.
Downers Grove, IL 60515
(630)621-8329
Fax: (480)287-9128